IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES WILSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:15-CV-1035-NJR-DGW ) |
| DANA DARNOLD, RYAN R. ERICKSON, OFFICER HARGETT, and OFFICER OSWALT, | ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

A Motion for Summary Judgment filed by Defendant Dana Darnold is pending before the Court. (Doc. 33). For the reasons set forth below, the Motion is granted.

### PROCEDURAL BACKGROUND

Plaintiff Charles Wilson, an inmate in the custody of the Illinois Department of Corrections, brings this action pursuant to 42 U.S.C. §1983 alleging his constitutional rights were violated during the time he was incarcerated at Lawrence Correctional Center. Specifically, Wilson's complaint alleges he was assaulted by three correctional officers on October 7, 2013, and that Nurse Dana Darnold subsequently refused to provide medical treatment for the head injury he sustained in the attack. Wilson's complaint was screened pursuant to 28 U.S.C. §1915A, and he was allowed to proceed on the following claims (Doc. 8, p. 4):

Count I: Eighth Amendment excessive force claim against Defendant Correctional Officers Erickson, Hargett, and Oswalt for using excessive force against Wilson after the magazine incident on or about October 7, 2013;

Count II: Eighth Amendment deliberate indifference to medical needs claim against Defendants Erickson, Hargett, and Oswalt for refusing Wilson's request for treatment of his injuries arising from the beating reference in Count One;

Count III: First Amendment retaliation claim against Defendant Darnold for refusing to examine or treat Wilson's injuries after he threatened to report her to her supervisor; and

Count IV: Eighth Amendment deliberate indifference to medical needs claim against Defendant Darnold for failing to examine or treat Wilson after he reported his symptoms and requested medical assistance.

Darnold filed a motion for summary judgment on February 21, 2017 (Doc. 33), and Wilson filed a timely response on April 21, 2017 (Doc. 45).

## Factual Background

Wilson asserts Defendant Correctional Officers Erickson, Hargett, and Oswalt assaulted him on October 7, 2013. (Doc. 1, pp. 6-7). During the assault, these individuals allegedly slammed Wilson's head into the floor and later into the shower cabinet in the segregation unit. (Doc. 1, pp. 7, 13; Doc. 45, p. 17, ¶ 4). Wilson requested medical attention, indicating he had a headache and was feeling light-headed and dizzy. (Doc. 45, p. 17, ¶ 5). Eventually Darnold, a registered nurse at Lawrence Correctional Facility, arrived in the segregation unit. (Doc. 34-6, ¶¶ 4, 7, 11-13; Doc. 45, p. 17, ¶ 6).

The parties dispute the actions Darnold took after arriving in the segregation unit. Wilson attests that after arriving, Darnold began flirting with officers until he told her to "do the job that she came over for" and threatened to report her to her supervisor. (Doc. 45, pp. 17-18, ¶ 6). Darnold then "came close to the segregation holding cell" and Wilson told her he was feeling light-headed, dizzy, had a headache, and that a bump was growing on his forehead. (Doc. 45, pp. 17-18, ¶ 6). Wilson asserts that Darnold told him in a "sarcastic and laughing tone" he had to wait twenty-four hours before she would provide any treatment. (Doc. 45, pp. 17-18, ¶ 6). Wilson further alleges that Darnold made this statement "without any test nor [*sic*] close physical examination." (Doc. 45, pp. 17-18, ¶ 6).

Conversely, Darnold states when she saw Wilson on October 7, 2013, he had no symptoms consistent with a concussion or other neurologic injury and no physical signs of injury. (Doc. 34-6, ¶ 13). As a registered nurse Darnold is qualified to look for signs of concussion or neurologic injury including monitoring the patient's speech and gait, determining whether the patient is alert and oriented, and checking the patient's pupils and grip strength. (Doc. 34-6, ¶ 12). Wilson's medical record dated October 7, 2013, prepared by Darnold, notes that Wilson was "alert orient x 3," "speech clear," "gait steady," "pupils equal and reactive to light," and "bilateral grasp equal and steady." (Doc. 34-1, p. 1). Darnold also noted there was no redness or swelling that indicated an area of contusion (Doc. 34-1, p. 1) and that she advised Wilson to return to nurse sick call the next day or sooner if any problems arose (Doc. 34-1, p. 2; Doc. 34-6, ¶ 13). Wilson

asserts the medical records created on this date and signed by Darnold are inaccurate (Doc. 45, p. 18, ¶ 7), but does not specify how.

It is undisputed that Darnold did not see Wilson for complaints of a head injury or concussion after October 7, 2013. It is also undisputed that Wilson was evaluated by other medical providers on October 17, 2013, and October 22, 2013, for complaints of a headache related to the October 7 incident.[1] (Doc. 34-7, p. 1; Doc. 34-8, p.1).

In April 2014, Wilson fell backward while climbing to the top bunk in his cell. (Doc. 45, p. 18, ¶ 11; Doc. 45, p. 26). Wilson contends that he sustained a concussion from the October 7, 2013 assault that caused this subsequent fall. (Doc. 45, p. 18, ¶ 11). As a result of the fall, Wilson was taken to the hospital and then regularly examined for complaints of headache (Doc. 45, pp. 25-44), but he only saw Darnold once during this period (July 24, 2014). (Doc. 34-6, ¶ 17). On that occasion, he complained of head pain and requested a change in his headache medication. (Doc. 34-6, ¶ 17). Darnold referred Wilson to the doctor for the next available date, July 28, 2014. (Doc. 34-6, ¶ 17; Doc. 45, p. 31).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate there are no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The

---

[1] Wilson was prescribed pain relievers and, at his evaluation on October 22, 2013, the physician advised Wilson to follow-up in about three weeks. (Doc. 34-8, p. 2). Wilson's medical records indicate various visits to the healthcare unit regarding complaints of headaches in November 2013; however, he was not seen by Darnold during these examinations. (Doc. 45, pp. 23-25).

moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id*. The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

## Discussion

### I. Deliberate Indifference (Count IV)

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate he suffered from an objectively serious medical condition. *Id.* at 591-92. Second, the plaintiff must establish

that the individual prison officials were deliberately indifferent to that condition. *Id.*

With respect to the first requirement, minor aches and pain do not constitute a serious medical need, but "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" constitute a serious medical need. *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

Here, Darnold does not contest that Wilson's medical condition meets the requirement of a "serious medical need" as defined above. Because there is no argument made regarding this requirement, the Court finds the point conceded and that Wilson's complaint of a head injury qualifies as a serious medical condition.

As for the second requirement, in order to show that prison officials acted with deliberate indifference, a plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." Proving deliberate indifference is difficult, however, because prison medical professionals are entitled to deference unless no minimally competent professional would have responded similarly under those circumstances. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Accordingly, a plaintiff must show more than simple medical malpractice. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016).

Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). In

other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Pyles*, 771 F.3d at 409.

Further, courts have held that a prisoner's medical testimony cannot create a genuine issue of material fact to defeat summary judgment when that testimony is controverted by clear medical evidence. *Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986) ("A court might be able to find a witness incredible as a matter of law … [if his] story was irrefutably contradicted by documentary evidence."); *Cesal v. Molina*, No.: 12-1524-SLD, 2015 WL 13357438, *6 (C.D. Ill. March 24, 2015) (citing *Booher ex rel. T.W. v. Montavon*, 555 F.App'x 479, 484 (6th Cir. January 24, 2014)).

Here, Wilson's complaint that a proper evaluation was not completed by Darnold is refuted by the medical record and thus insufficient to preclude summary judgment. The record before the Court establishes Darnold evaluated Wilson on October 7, 2013, in response to his complaints of head trauma following an assault. (Doc. 34-1, pp. 1-2). According to Wilson's medical records, Darnold determined Wilson was alert and oriented with clear speech, a steady gait, equal and reactive pupils, and had no redness or swelling at the area of the possible contusion. (Doc. 34-1, p. 1). Based on her assessment, Darnold determined Wilson had no symptoms consistent with a concussion or other neurologic injury. (Doc. 34-1, pp. 1-2). Although Wilson claims the medical record is "not accurate of the discussion or event that occurred," he fails to identify what part of the medical record is inaccurate or explain in what way it was inaccurate. Thus,

Wilson's declaration that Darnold "without any test nor [*sic*] close physical examination" told him to wait twenty-four hours before she would provide treatment is contradicted by the medical records and insufficient to preclude summary judgment.

Further, Wilson's complaint that Darnold instructed him to follow-up in twenty-four hours (Doc. 34-1, pp. 1-2), is not dispositive of any issue. Rather, this complaint appears to be dissatisfaction with a course of treatment, which the Seventh Circuit has held does not establish a claim of deliberate indifference. *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). That Wilson later complained of headaches and dizziness, which he now attributes to the October 7, 2013 incident, does not establish that Darnold's original evaluation or treatment regimen was a significant departure from accepted medical standards of care. Thus, Darnold is entitlted to summary judgment on Count IV (deliberate indifference).

## II. Retaliation (Count III)

It is well settled that a prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–84, (1977). For a plaintiff to prevail on a First Amendment retaliation claim, the Seventh Circuit requires a showing: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

At the summary judgment stage, the Seventh Circuit has held the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a *prima facie* case, the plaintiff must produce evidence that his speech was at least a motivating factor in the defendant's decision to take retaliatory action. *Id.* Then, the burden shifts to the defendant to rebut the causal inference raised by the Wilson's evidence. *Id.* If the defendant fails to counter the plaintiff's evidence, the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the "but-for" causation needed to succeed on his claim. *Id.*

Wilson's retaliation claim against Darnold is premised on her purported refusal to examine or treat Wilson's injuries after he threatened to report her to her supervisor. Even Wilson's memorandum of law, however, admits that Darnold approached his cell after he threatened to report her and listened to his complaints. (Doc. 45, pp. 17-18, ¶ 6). As discussed above, the medical records contradict Wilson's claim that Darnold did not evaluate him. As Wilson has not presented any evidence of a retaliatory action, let alone that that his speech was a motivating factor for any retaliation, Wilson cannot establish a prima facie case. Thus, Darnold is also entitled to summary judgment on Count III (retaliation).

## Conclusion

For the reasons set forth above, the Motion for Summary Judgment filed by Defendant Dana Darnold (Doc. 33) is **GRANTED**. Defendant Darnold and the claims

brought against her, Counts III and IV, are **DISMISSED with prejudice**. The Clerk is **DIRECTED** to enter judgment accordingly at the conclusion of the entire action.

Wilson is now proceeding in this action on Counts I and II against Defendants Erickson, Hargett, and Oswalt.

**IT IS SO ORDERED.**

DATED: September 14, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**